# MEMORANDUM IN SUPPORT

**. Does the Unit Court possess the statutory authority to hear and decide the issues of this adversary?**

The requested relief asked for by the Plaintiff is a non-core proceeding, pursuant to 28 U.S.C. 157(c)(1). Furthermore, pursuant to Rule 9033(a), "In non-core proceedings heard pursuant to 28 U.S.C. 157(c)(1), the bankruptcy judge <u>shall</u> file proposed findings of fact and conclusions of law. " Rule 9033(d) sets the Standard of Review. The record is clear that the Bankruptcy Unit Court does not have the consent of all parties to hear this non-core matter. Therefore, the only proper course of action for the Bankruptcy Unit is to deny the Plaintiff's Motion for Dismiss, as that request is designed to effect property of the estate, of which the only Court with in remand subject matter jurisdiction of the estate is the U.S. District Court, pursuant to 28 U.S.C. 1334(d). The record shows that the Plaintiff petitioned the Art. I Bankruptcy Unit for an order of dismissal that infringed on the Art. III powers, and the U.S. Code does not grant the Art. I Bankruptcy Unit any statutory authority to issue any order that would have the effects of an Art. III Order regarding property of the estate.

The subject matter jurisdiction of the bankruptcy court has been the subject of intense controversy since 1982 and is the area of jurisdiction in which there is the least certainty. The subject matter jurisdiction of the bankruptcy court derives from its status as a unit of the district court. 28 U.S.C. 151. The law is clear that the district court has original and exclusive subject matter jurisdiction over cases filed under Title 11. 28 U.S.C. 1334(a). The controversy arises from the extent of the subject matter jurisdiction over all civil proceedings that arise under Title 11, or arise in or relate to cases under Title 11, that is ultimately exercisable by the bankruptcy court as a unit of the district court.

The Former Bankruptcy Court System Under the Bankruptcy Code

To Have or Not to Have an Article III Bankruptcy Court

To eliminate the esoteric and time consuming litigation over summary jurisdiction, both the House of Representatives and the Senate proposed bankruptcy legislation providing the bankruptcy court with pervasive subject matter jurisdiction completely unimpeded by any notion of summary jurisdiction. Both legislative bodies proposed to empower bankruptcy courts to determine all civil proceedings arising under the Bankruptcy Code or arising in or related to cases under the Bankruptcy Code.[66] At that point, however, unanimity ceased. A great debate evolved as to whether the bankruptcy judges exercising new pervasive subject matter jurisdiction should be independent of district courts and have those attributes that the Constitution mandates for judges exercising the judicial power of the United States.[67] Whether the bankruptcy judges should be independent and have lifetime tenure during good behavior and an irreducible compensation, so-called article III status, evoked two starkly different points of view.

The reasons for creating independent article III bankruptcy courts engulfed practical concerns and institutional values. The first and foremost practical concern was that bankruptcy judges would be constitutionally unable to exercise their pervasive subject matter jurisdiction unless they had article III status.[68] Article III status, by itself, also carries out the separation-of-powers doctrine. It insures the independence of the judiciary from control of the executive and legislative branches of government.[69] Equally important, article III status promotes institutional values directly bearing on the carrying out of federal bankruptcy law. Lifetime tenure and irreducible compensation create an independence from political forces helping to promote public confidence in judicial determinations.[70] Clearly, the security of an article III appointment helps to attract well-qualified persons to the federal bench.[71] Likewise, article III status insulates the individual judge from improper influences not only by other branches of government, but by colleagues as well, thus promoting judicial individualism.[72] These values emanating from article III status are particularly necessary and desirable in bankruptcy litigation. Routinely, bankruptcy judges have to impair rights of institutional lenders as well as other creditors, such as victims of mass torts, on a going forward basis for the survival of the debtor's business and ultimate realization of all parties-in-interest. Such creditors will not and do not have confidence that the bankruptcy judge is dealing with them fairly and adequately protecting them if they believe the bankruptcy judge is inferior.[73] Notably, the National Bankruptcy Conference, composed of the finest minds in the nation on the subject of bankruptcy, concurred in the foregoing arguments for article III bankruptcy courts.[74]

Conversely, some of the most distinguished and respected judges and lawyers in the country opposed independent and article III bankruptcy courts. One argument is that such a court would unjustifiably grant bankruptcy litigants priority over other litigants to federal district court time.[75] Another reason was the claim that the bankruptcy court system under the Bankruptcy Act worked well and efficiently.[76] The Judicial Conference of the United States believed that article III status was unnecessary for bankruptcy courts to exercise their expanded jurisdiction under the Bankruptcy Code.

> If you create a specialized court which is a specialized district court, you then do create the situation I earlier criticized, that is to say, unlike any other civil litigant you have given total priority to Federal district court time that no other litigant has and I say I don't see how that can be justified.

Further opposition to independent article III bankruptcy courts mounted, based on concerns that (1) to enable new ideas to influence bankruptcy litigation it should be determined by district courts of general jurisdiction as opposed to specialized bankruptcy courts, (2) more article III judges would dilute the significance and prestige of district judgeships, and (3) bankruptcy judges under the Bankruptcy Act may be converted to article III judges on a wholesale basis, thereby evading the machinery for selection of article III federal judges.[78]

The argument about prestige quickly snowballed in an unfortunate direction. It was followed by a growing belligerency and caste system between district judges and bankruptcy judges. The prestige argument was based on a concern that the nation's district judgeships provide our country with a quintessential means of dispensing justice largely due to the brilliant quality of the judges, which quality should not be endangered by any unnecessary

multiplication of their number.[79] The argument was interpreted, however, to mean that district judges simply wanted to have bankruptcy judges beneath them for petty reasons. Unfortunately, to at least a limited extent the interpretation of the argument became a self-fulfilling prophecy so much so that the Wall Street Journal ran a front-page story entitled Bankruptcy Judges Get Little Respect, Or So They Claim.[80] The article reports numerous petty indignities foisted on bankruptcy judges ranging from having other judges question the caliber of the bankruptcy bench because bankruptcy judge appointments were not congressionally reviewed, to having district and circuit court judges deny bankruptcy judges use of judges' elevators, votes at circuit conferences, and invitations to circuit conference dinner dances.

### Subject Matter Jurisdiction of Bankruptcy Judges

What was to become only the first outcome of the debate was passage of the Bankruptcy Reform Act of 1978, creating bankruptcy court adjuncts to the district court, with pervasive subject matter jurisdiction, but without article III status for bankruptcy judges. Thus, the new bankruptcy court system eliminated the prior morass of summary jurisdictional disputes. It provided bankruptcy judges sufficient power to determine in a timely fashion all disputes relating to the debtor, but maintained bankruptcy judgeships in an inferior posture, albeit a better posture than before. Bankruptcy judges were to be appointed by the President with the advice and consent of the Senate for fourteen-year terms.[81] Bankruptcy court orders remained appealable to the district court unless the litigants agreed to appeal directly to the court of appeals.[82]

By failing to grant bankruptcy judges article III status, Congress was knowingly gambling that the exercise by bankruptcy judges of their broad jurisdiction would not be an exercise of the judicial power of the United States by non-article III judges in violation of article III, section 1 of the Constitution.[83] Congress lost the bet.

### Grant of Jurisdiction to Bankruptcy Judges Held Unconstitutional

In March of 1980 a chapter 11 debtor-in-possession filed in the bankruptcy court an action against a third party for breaches of contract and warranty and for misrepresentation, coercion, and duress. The constitutionality of the non-article III bankruptcy judge's determining the action pursuant to the bankruptcy court's pervasive jurisdiction was challenged. Ultimately, and on June 28, 1982, the United States Supreme Court in a case entitled Northern Pipeline Construction Co. v. Marathon Pipe Line. Co. (Northern Pipeline),[84] held unconstitutional so much of the new subject matter jurisdiction as enabled a non-article III bankruptcy judge to determine traditional common-law actions having no federal rule of decision and only coming before the bankruptcy court because the plaintiff previously filed a bankruptcy petition.[85]

To provide Congress with an opportunity to grant bankruptcy courts article III status or to limit their subject matter jurisdiction to what would be constitutionally permissible, the Supreme Court stayed the effectiveness of its judgment from June 28, 1982 through October 4, 1982.[86] Subsequently, the Supreme Court granted Congress an extension of the stay through December 24, 1982.[87] When Congress failed to remedy the situation by December 24 and applied for a second extension of the stay, the Supreme Court denied the

application.[88]

### The Emergency Rule

To avoid the catastrophe that would have resulted from the abrupt cessation of bankruptcy cases on December 24, 1982, the Judicial Conference of the United States promulgated the so-called Emergency Rule. It was adopted with minor variations by all United States district courts. Pursuant to the Emergency Rule, the bankruptcy courts continued to determine matters described as nonrelated proceedings thought not to require determination by article III courts.[89] On the other hand, related proceedings those proceedings thought to require determination by article III courts were to be heard by the bankruptcy judge pursuant to the Emergency Rule, but the bankruptcy judge could not determine them. Rather, the bankruptcy judge was to propose findings of fact and conclusions of law to the district court.[90] When a bankruptcy court order issued in a nonrelated proceeding was appealed to the district court and when the bankruptcy court's proposed findings of fact and conclusions of law in a related proceeding were submitted to the district court, the district court could hold a hearing and receive additional evidence, and then accept, reject, or modify the bankruptcy court's order or proposals without giving any deference whatsoever to the findings of the bankruptcy judge.[91]

Although the constitutionality of the Emergency Rule was successfully challenged in several bankruptcy and district courts,[92] the United States courts of appeals consistently upheld its constitutionality.[93]

### The Bankruptcy Court System Provided by the Bankruptcy Amendments and Federal Judgeship Act of 1984

### Congress Considered Two Approaches

When reconfronted with the task of designing a constitutional bankruptcy court system, Congress was able to consider two possible solutions embodied within the plurality and dissenting opinions in Northern Pipeline.[94] The plurality opinion quoted from Professor Paul J. Mishkin's letter to Congressman Rodino, as chairman of the Committee on the Judiciary of the House of Representatives.[95] The letter set forth a Solomonic solution to the constitutional and other concerns described above in respect of the structuring of the bankruptcy court. Professor Mishkin noted that the bankruptcy court could be established as an article III court with the judges having lifetime tenure during good behavior and an irreducible compensation, while at the same time the bankruptcy judges' compensation could be less than that of district court judges and the bankruptcy judges could be prohibited from sitting on district courts and courts of appeals.[96]

That approach would obviously solve constitutional problems because the bankruptcy court would be an article III court. At the same time, the article III status would attract higher caliber individuals and fulfill the institutional values of article III.[97] Notably, the concerns relating to the prestige of district court judges would likewise be satisfied because the hierarchy would be preserved with district court judges in a superior position by virtue of their higher salaries and abilities to sit on courts that bankruptcy judges could not sit on.

The other possible solution arising out of Northern Pipeline was embodied in Chief Justice Burger's

independent dissent.[98] The Chief Justice wrote that the problems arising from today's judgment can be resolved simply by providing that ancillary common-law actions, such as the one involved in these cases, be routed to the United States district court of which the bankruptcy court is an adjunct.[99]

With some significant variations, Congress adopted the approach of Chief Justice Burger.

Subject Matter and Personal Jurisdiction of the New Non-Article III Bankruptcy Court

Congress has vested in the United States district courts original and exclusive subject matter jurisdiction of all bankruptcy cases and original[100] subject matter jurisdiction of all civil proceedings arising under[101] title 11, or arising in[102] or related to[103] cases under title 11.[104] The district court in which the bankruptcy case is commenced or pending has exclusive jurisdiction of all property, wherever located, of the estate and of the debtor as of the commencement of the case.[105] Accordingly, it is clear that the district court has subject matter jurisdiction to issue an order directing the turnover of property of the estate. What happens, though, if a chapter 11 debtor-in-possession files a complaint seeking the turnover of property, and the defendant answers by claiming that the property is not property of the estate? Under the Bankruptcy Act, the district court sitting as a court of bankruptcy could determine the complaint only if the defendant consented or failed to establish a substantial adverse claim to the property. That was because the court would otherwise lack summary jurisdiction. Congress, however, has not imposed a summary jurisdiction requirement on the new bankruptcy court. Therefore, the court may determine the complaint even if the defendant has a substantial adverse claim to the property, as long as the cause of action is within the court's subject matter jurisdiction. A complaint to recover property claimed to be property of the estate clearly arises under title 11 specifically under Bankruptcy Code sections 542 and 543[106] Thus, the court has subject matter jurisdiction under 28 U.S.C. Section 1334(b).

Congress has provided that the bankruptcy judges in each district shall constitute a unit of the district court to be known as the bankruptcy court for that district. The bankruptcy judges are judicial officers of the district courts.[107] They are empowered to determine core proceedings, but can only propose to the district court determinations of non-core proceedings.[108] For instance, a proceeding to turn over property of the estate constitutes a core proceeding,[109] which can be determined by the bankruptcy judge.[110] Conversely, a chose in action, such as the contract and tort claims asserted in Northern Pipeline, is a non-core proceeding, which may be heard, but not determined, by a bankruptcy judge unless the parties consent to the proceeding's determination by a non-article III judge.[111]

Personal jurisdiction of the United States district court and its bankruptcy court unit remains unchanged from Bankruptcy Act cases. It flows from the power of the government and is subject to the constraints of due process.[112]

---

(Footnotes)

66.   See H.R. 8200, 95th Cong. (1978) (proposed 28 U.S.C. 1471(a), (b)); S. 2266, 95th Cong. (1978) (proposed 28 U.S.C. 775(a) 1334(a)-(b)).
67.   U.S. Const. art. III, 1.

68.     See, e.g., testimony of Professor Frank R. Kennedy of University of Michigan Law School at the Hearings before the Subcommittee on Civil and Constitutional Rights of the Committee on the Judiciary, House of Representatives, 95th Cong., 1st Sess. on H.R. 8200 held on December 12, 13 and 14, 1977:

**Professor Kennedy.** I would just like to address myself to some of the things that the Attorney General recently observed.

He made an important point in his argument that we do not need this innovative article III court to have expanded bankruptcy jurisdiction. But he improperly separates his view of the court from his recognition that we ought to eliminate this expensive, time-wasting litigation over jurisdictional distinctions and these things are conjoined. If we are going to give this comprehensive jurisdiction to this bankruptcy court, it is very important that we have a court with the authority and the status to handle all of that responsibility, and you just cannot separate the expansion of the jurisdiction from the view that we have to have an article III court. And I believe the Attorney General does not really follow through some of his own views when he says, yes, we should have a bankruptcy judge but he shouldn't have comprehensive contempt power. He's still thinking of the bankruptcy judge with an inferior position when he says we don't want a bankruptcy judge with comprehensive contempt power. What we want is a judge with prestige and the responsibility so that he can conduct jury trials, can impose contempt sanctions appropriate to the offense, and that would have the confidence of people who are adversaries of the trustees.

69.     Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 59 (1982).
70.     Id. at 59 n.10.
71.     Id.
72.     Id.
73.     The difference between article III judges and non-article III judges is conceded. At the hearing held on December 12, 1977 by the Subcommittee on Civil and Constitutional Rights of the Committee on the Judiciary of the United States House of Representatives, the following discourse occurred:

**Mr. Butler.** Well, thank you. I really am sorry I asked the question now. [Laughter.]

Judge Rifkind, I have the impression from what you're saying that you have the feeling that bankruptcy the bankruptcy judge and the bankruptcy bar is pretty mediocre; is that true?

[Former United States District Judge Simon Rifkind as spokesman for the American College of Trial Lawyers.] I do not share that view at all. I have known some very distinguished bankruptcy referees sitting in my district of great quality and great distinction. And they were very proud to hold the office they held.

**Mr. Butler.** That's certainly true. I had the impression from what you said that the quality of people we are presently able to attract to be referees in bankruptcy, or bankruptcy judges, is I use the word mediocre, you may use what word you want of a lesser caliber. Is that your view?

**Judge Rifkind.** I would say that it is easier to find people whom you'd be willing to appoint bankruptcy referees, than to find people whom you'd be willing to appoint district judges; I do believe that to be true.

**Mr. Butler.** Did you believe this is a problem that we ought to be addressing?

**Judge Rifkind.** In other words, a bankruptcy referee does not quite have to measure up to the stature, station, philosophy that we ought to expect from a district judge.

Yes: I believe that to be the case, for the same reason that when you select a magistrate that you appoint to a district court, you don't quite get the people or look for the people that you would look for if you were looking for a district judge.

That doesn't mean that they're not able, intelligent, good citizens. But we look for exceptional standing for a district judge; at least I hope so.

**Mr. Butler.** In other words, you don't think that's a problem we ought to be addressing: elevating the quality of the judges on the bankruptcy bench?

**Judge Rifkind.** I'd be delighted to see the quality lifted all through the entire governmental system; yes, of course, that's a fine ideal.

But I must confess, it's hard to find top-quality judges. It will be harder to find them if you're going to double the demand for them.

74. See Memorandum of the National Bankruptcy Conference H.R. 8200 and testimony of George M. Treister, William J. Rochelle, Jr., Frank R. Kennedy, Vern Countryman, and Lawrence P. King given at the hearings before the Subcommittee on Civil and Constitutional Rights of the Committee on the Judiciary of the House of Representatives, 95th Cong. 1st. Sess. on H.R. 8200 held on December 14, 1977.

75. See testimony of Honorable Shirley M. Hufstedler, Circuit Judge of the United States Court of Appeals for the Ninth Circuit on December 13, 1977 at the Hearings of the Subcommittee on Civil and Constitutional Rights of the Committee on the Judiciary, United States House of Representatives, 95th Cong. 1st. Sess., for example:

**Mr. Klee.** Fine. Assuming you approve article III judges at the trial level, if the appeals problem can be solved let's turn to the appeals problem.

Would an article III court of bankruptcy appeals between the bankruptcy court, the independent article III bankruptcy trial court, and the court of appeals solve the appeals problems; and if not, why not?

**Judge Hufstedler.** It might.

Now, of course, you still have the same difficulty I mentioned earlier; that is to say that either you create a specialized article III court or you add to the existing district judges enough judges to undertake that load.

Those are the two options on article III. There aren't any others.

76. The present system has worked and it has worked well and efficiently. It can readily be geared into the proposed new Act with complaints initiating proceedings filed with the Clerk of the United States District Court as district court cases and automatic referral to the bankruptcy referee. This would keep the structure entirely within the existing system without the need for another court in the federal judiciary system. Excerpt from statement of Honorable Edward Weinfeld, United States District Judge of the United States District Court for the Southern District of New York, at Hearings Before the Subcommittee on Civil and Constitutional Rights of the Committee on the Judiciary, United States House of Representatives, 95th Cong., 1st. Sess. on December 13, 1977.

77. See Statements and testimony of Honorable Ruggero J. Aldisert, United States Circuit Judge of the United States Court of Appeals for the Third Circuit, at Hearings before the Subcommittee on Improvements in Judicial Machinery of the Committee on the Judiciary, Senate, 95th Cong., 1st. Sess., on S.2266 and H.R. 8200 held on November 28, 1977, for instance:

But I think it is very significant that, when it came to the question, not as to a question as to whether there should be an Article III judge or another type of judge, but strictly from the jurisprudential standpoint, from the standpoint of the constitutionality of the bankruptcy judge assuming increased powers, there was unanimity in this committee and there was unanimity in the Judicial Conference of the United States that Article III status was not necessary to assume that expanded jurisdiction. Circuit conferences, consisting of every district and every circuit judge within a circuit, have concluded that an Article III judge is not necessary. The only circuit conferences that have not so concluded are the First Circuit and the District of Columbia Circuit, because the question was not presented to them. ...

78. Rifkind, Bankruptcy Code Specialized Court Opposed, 52 AM. BANKR. L.J. 187Ñ91 (1978).

Accord statements and testimony of former United States District Judge Simon H. Rifkind, on behalf of American College of Trial Lawyers, at Hearings held on December 12, 1977 of the Subcommittee on Civil and Constitutional Rights of the Committee on the Judiciary, United States House of Representatives, 95th Cong. 1st Sess.; Contra King, Bankruptcy Code Specialized Court Supported. 52 AM. BANKR. L.J. 193-97(1978).

79.     See Rifkind, Bankruptcy Code Specialized Court Opposed. 52 AM. BANKR. L.J. 187, 189 (1978):

The first of these practical considerations is that a significant increase in the number of Article III judges, contemplated by the proposed law, would dilute the significance, and prestige of district judgeships. Prestige is a very important factor in attracting highly qualified men and women to the federal bench, from more lucrative pursuits. As Judge (Henry J.) Friendly (U.S. Court of Appeals for the Second Circuit) has noted:

The largest district courts will be in the very metropolitan areas where the discrepancy between uniform Federal salaries and the financial rewards of private practice is the greatest, and the difficulty of maintaining an accustomed standard of living on the Federal salary the most acute. There is real danger that in such areas, once the prestige factor was removed, lawyers with successful practices particularly young men, would not be willing to make the sacrifice.Ó Friendly, Federal Jurisdiction.' A General View, 29-30 (1973).

80.     Wall St. J., Sept. 25, 1984, at 1, 23 (eastern ed.).

81.     Pub. L. No. 95-598, 95th Cong. 2d Sess., 92 Stat. 2549, 2657 (former 28 U.S.C. 152-153) (1978).

82.     Former 28 U.S.C. ∞1293(b), 1334 (1978).

83.     See House Report at 63-88 (letters from distinguished law professors to Honorable Peter W. Rodino, Jr., Chairman, Committee on the Judiciary, House of Representatives, discussing the possible unconstitutionality of the bankruptcy court).

84.     458 U.S. 50 (1982).

85.     Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 90-91(1982). A plurality of the Supreme Court ruled that the grant of subject matter jurisdiction to the non-article III bankruptcy court was unconstitutional. 458 U.S. at 87. Two justices wrote an opinion concurring with the plurality to the extent of holding unconstitutional so much of the subject matter jurisdictional grant as enabled the bankruptcy court to entertain and decide common-law actions having no federal rules of decision. 458 U.S. at 91. Thus, the holding of the Supreme Court is limited to the ruling in the concurring opinion. Based on their recognition that Congress had not wanted to bifurcate bankruptcy litigation, both the plurality and concurring opinions also agreed that the subject matter jurisdiction necessary to determine the contract and tort action was not readily severable from the entire grant of subject matter jurisdiction and that it would be more appropriate for Congress to determine what to do, as opposed to providing that the bankruptcy court system should remain intact except for the routing of such common-law claims to other courts. 458 U.S. at 87 n. 40, 91-92. **Therefore, the Supreme Court overturned the entire grant of subject-matter jurisdiction to the nonarticle III bankruptcy court. 458 U.S. 50, 91-92.**

86.     Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 88 (1982).
87.     Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 459 U.S. 813(1982).
88.     United States v. Marathon Pipe Line Co., 459 U.S. 1094 (1982).

89.     Emergency Rule section (d)(3)(A). Nonrelated proceedings included administrative matters, allowance of claims, orders in respect of obtaining credit, orders to turn over property of the estate, proceedings to set aside preferences and fraudulent transfers, proceedings to terminate the automatic stay, proceedings to determine dischargeability, counterclaims by the estate against persons filing claims against the estate, proceedings in respect of confirmation, orders approving the sale of property where not arising

from proceedings resulting from claims brought by the estate against parties who have not filed claims against the estate, and similar matters.

90. Emergency Rule section (d)(3)(B). On consent of the parties to a related proceeding, the bankruptcy judge was authorized to enter orders disposing of it. Id.

91. Emergency Rule section (e)(2)(B).

92. See e.g., In re South Portland Shipyard & Marine Rys., Inc., 32 B.R. 1012 (D. Me. 1983), vacated and remanded due to passage of 1984 Amendments, 740 F.2d III(1st Cir. 1984); In re Romeo J. Roy, Inc. 32 B.R. 1008 (D. Me. 1983), vacated and remanded due to passage of 1984 Amendments, 740 F.2d III (1st Cir. 1984); In re United Grocers Corp., 29 B.R. 309 (Bankr. D.N.J. 1983). Some courts overturned the rule on statutory grounds. See, e.g., In re Brown, 10 B.C.D. 1375 (Bankr. N.D. Ga. 1983); In re Jackson County Gas Co., 10 B.C.D. 885 (Bankr. E.D. Ky. 1983).

93. In re Committee of Unsecured Creditors of F S Communications Corp., 760 F.2d 1194, 1199 (11th Cir. 1985) (action to recover preference; Stewart v. Stewart (In re Stewart), 741 F.2d 127 (7th Cir. 1984) (action to determine dischargeability of debt); In re Colorado Energy Supply Inc., 728 F.2d 1283 (10th Cir. 1984) (rent claim); Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd., 709 F.2d 190 (3d Cir.), cert. denied, 104 S. Ct. 349 (1983) (denial of motion to dismiss action based on contractual forum selection clause); In re Kaiser, 722 F.2d 1574 (2d Cir. 1983) (action to determine right to discharge and to impose constructive trusts as remedy for fraudulent transfer); White Motor Corp. v. Citibank, H.A. 704 F.2d 254 (6th Cir. 1983) (application to appoint special master to adjudicate products liability claims in chapter 11 case); First Nat'l Bank v. Hansen (In re Hansen), 702 F.2d 728(8th Cir. 1983) (application to determine secured claim), cert. denied, 103 S. Ct. 3539 (1983); Braniff Airways, Inc. v. Civil Aeronautics Bd. (In re Braniff Airways, Inc.), 700 F.2d 214(5th Cir.) (action to revoke reference by intervener), cert. denied, 461 U.S. 944 (1983). Many of the challenges to the Emergency Rule included claims that the United States district courts no longer had jurisdiction to issue orders in bankruptcy cases. Before the Supreme Court overturned the jurisdictional grant to the bankruptcy courts, the grant of subject matter jurisdiction, by the terms of the statute (former 28 U.S.C. 1471(a)-(b)), was to the district court with the bankruptcy court being granted authority to exercise the jurisdiction vested in the district court by virtue of its adjunct status. Former 28 U.S.C. ¤1471(c). In assessing the constitutionality of the grant of subject matter jurisdiction to the nonarticle III bankruptcy court, the Supreme Court ruled that the placing of the subject matter jurisdiction in the district court to be exercised by the bankruptcy court was simply a facade. Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 813(1982). Ironically, however, it was that placing of subject matter jurisdiction that enabled the courts of appeals to rule that the district courts still had subject matter jurisdiction to issue orders under the Emergency Rule. See, e.g., White Motor Corp. v. Citibank, H.A., 704 F.2d 254,260-61 (6th Cir. 1983); In re Kaiser, 722 F.2d 1574, 1578 (2d Cir. 1983).

94. Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 75 n. 28, 92 (1982)
95. The letter from Professor Paul J. Mishkin, Emmanuel S. Heller Professor of Law at the University of California, Berkeley, dated June 22, 1976 is reprinted in full in the House Report at 78-79.
96. House Report at 78-79; Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 78 n. 28 (1982).
97. Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 59 n.10 (1982).
98. Id. at 92.
99. Id.
100. The distinction between original and exclusive jurisdiction is illustrated in Teachers Ins. & Annuity Ass'n v. Butler, 58 B.R. 1019 (S.D.N.Y. 1986), aff'd in part and motion to stay debtor's appeal granted, 803 F.2d 61 (2d Cir. 1986). There, a mortgage lender obtained an order awarding it damages from a real estate partnership and its partners who breached an obligation to negotiate the closing of a mortgage loan in good faith. After the United States district judge signed the judgment, but before the clerk entered it, the partnership commenced a chapter 11 case in another district. The clerk subsequently entered the judgment and the bankruptcy trustee for the partnership applied to the bankruptcy court presiding over the chapter 11 case for an order declaring that entry of the judgment was void and of no legal force or effect. (The trustee also filed vexatious pleadings seeking to remove the damages action to the wrong court and

seeking to appeal the judgment to the wrong court). The United States district court that issued the judgment determined that its postpetition entry was not a stay violation, 58 B.R. at 1022, and enjoined the partnership and partners from collaterally attacking the judgment except by direct appeal. Id. Curiously, the injunction did not mention the trustee. Had the bankruptcy court's jurisdiction been exclusive, the district court would have lacked jurisdiction to determine whether the postpetition entry of judgment was a stay violation. Although the injunction issued by the district court was said to be authorized by the All Writs Act (28 U.S.C. ¤ 1651) to protect the district court's and its appellate court's jurisdiction, it is doubtful that the district court could deprive the bankruptcy court of its original jurisdiction to determine whether entry of the judgment was a stay violation and should be regarded as void. Indeed, it may have been more appropriate for the district court to have abstained in favor of the bankruptcy court in respect of whether there was a stay violation. See In re Baldwin-United Corp. Litigation, 765 F.2d 343 (2d Cir. 1985). Ironically, the district judge added that neither the partnership nor the partners were entitled to a declaration from an article I bankruptcy judge that the entry of judgment by the article III district court was void. Actually, the bankruptcy judge is not constituted as an article I legislative judge (and was not one prior to the 1984 Amendments either, Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50,63 n. 13 (1982)) but rather as an officer under the control of the article III district judge. Additionally, the district judge had ardently opposed granting article III status to bankruptcy judges. See statement of Honorable Edward Weinfeld, United States District Judge, at Hearing before the Subcommittee on Civil and Constitutional Rights of the Committee on the Judiciary, United States House of Representatives, 95th Cong., 1st Sess. on Dec. 13, 1977.

101.    Civil proceedings arising under title 11 turn on provisions of title 11. Carlton v. BAWW, Inc., 751 F 2d 781(5th Cir. 1984); In re Sweet- water, 55 B.R. 724 (D. Utah 1985); In re Fresh Approach, Inc., 13 B.C.D. 478 (Bankr. N.D. Tex. 1985).

102.    Actions based on postpetition events involving activities of the debtor-in-possession have been held to arise in a case under title 11, L.A. Clarke & Son, Inc. v. Bullock Constr., Inc. (In re L.A. Clarke & Son, Inc.), 51 B.R. 31,33 (Bankr. D.D.C. 1985), whereas actions that the debtor could have brought prior to and independent of a case under title 11 have been held not to arise in a bankruptcy case, Zweygardt v. Colorado Nat'l Bank, 13 B.C.D. 459, 461 (Bankr. D. Colo. 1985).

103.    Notably, a civil proceeding is not related to a case under title 11 simply because it involves the debtor or issues common to the bankruptcy case. Bobroff v. Continental Bank (In re Bobroff), 766 F.2d 797, 802 (3d Cir. 1985). Rather, the civil proceeding must conceivably have an effect on the estate, which it will if its outcome may alter the debtor's rights, liabilities, options, and freedom of action, and impacts the handling and administration of the estate. Id. A post-petition cause of action of a chapter 7 debtor which action is not property of the estate, is not related to the chapter 7 case. Id. at 803. In Pacor, Inc. v. Higgins, 743 F.2d 984 (3d Cir. 1984), the court held that an action by two individuals against an asbestos supplier was not related to the chapter 11 case of the asbestos manufacturer although the manufacturer was made a third-party defendant by the asbestos supplier. Accord, Hanna v. Philadelphia Asbestos Co., 743 F.2d 996 (3d Cir. 1984). The court reasoned that the outcome of the individual's suit against the supplier would not definitively affect the debtor-manufacturer. Rather, the liability, if any, of the debtor-manufacturer would have to be independently established by the supplier in a separate action in which the debtor would not be bound by collateral estoppel or res judicata. If the debtor had indemnified the supplier, then the action would have been related. See Pacor, Inc. v. Higgins, 743 F.2d at 995. Similarly, post-confirmation actions by creditors against third parties to recoup debt discharged in a chapter 11 case may not be related to the chapter 11 case when they will not affect the assets of the estate or its liabilities. National City Bank v. Coopers & Lybrand, 802 F.2d 990, 994(8th Cir., 1986). Additionally, as under prior law, damage claims between two third parties are not normally within the bankruptcy court's jurisdiction, Citizen Bank & Trust Co. v. Melrose Park Nat'l Bank (In re Crystal Mfg. & Packaging, Inc.) 60 B.R. 816 (N.D. Ill. 1986) (no subject-matter jurisdiction over dispute between creditor and landlord of debtor not affecting debtor's estate); Diaconx Corp. v. Hamilton Bank (In re Diaconx Corp.), 65 B.R. 139 (E.D. Pa. 1986) (action of debtor's shareholders against debtor's bank-creditor not within bankruptcy court's subject matter jurisdiction);In re Douthit, 12 B.C.D. 1291 (M.D. Ga. 1985); Nell v. Borreson (In re John Peterson Motors, Inc.), 56 B.R. 588 (Bankr. D. Minn 1986) (court lacks subject matter jurisdiction and will not exercise ancillary jurisdiction over third-party complaint because outcome will not affect estate and third-party

complaint is non-core proceeding while complaint is core proceeding); Bennett Enters., Inc. v. Celebrezze (In re Garden Inn Steak House, Inc.), 64 B.R. 140 (Bankr. N.D. Ohio 1986); In re Dr. C. Huff Co., 44 B.R. 129 (Bankr. W.D. Ky. 1984), the same as disputes over a non-debtor's assets, In re Maryland Nat'l Indus. Fin. Corp., 12 B.C.D. 1352 (Bankr. N.D. Ill. 1985), and lien disputes between two creditors when the outcome has no impact on the estate, In re Alexander, 13 B.C.D. 47 (Bankr. D.N.D. 1985). There are some circumstances under which a debtor's use of property would be sufficient to bring within the court's subject-matter jurisdiction a third-party dispute as to that property, while a subsequent conversion of the case to chapter 7 and a lack of need for the property may negate jurisdiction. First Nat'l Bank v. Biallas (In re Denalco Corp.), 57 B.R. 392, 396 (N.D. Ill. 1986). When, however, the result of a conversion action by a secured claimholder against an unsecured claimholder may reduce the secured claim and make more assets available for unsecured claimholders, the conversion action is related to the bankruptcy case. Citizens Nat'l Bank v. Schaberg Lumber Co. (In re Bowling Green Truss, Inc.), 53 B.R. 391, 394 (Bankr. W.D. Ky. 1985). Cf In re Salem Mortgage Co., 783 F.2d 626 (6th Cir. 1986) (action of creditors against debtor and debtor's officers is related to bankruptcy case); In re Showcase Natural Casing Co., Bankr. L. Rep. (CCH) ¦ 70,775 (Bankr. S.D. Ohio 1985) (action of secured claimholder against guarantor is related to the chapter 11 case). Similarly, a dispute between two creditors holding senior and junior liens against the same collateral security involving the amount of attorneys' fees the senior lien secures is within the bankruptcy court's jurisdiction when the debtor has a right to redeem the property and is therefore affected by the amount of the lien secures. Blackburn-Bliss Trust v. Hudson Shipbuilders, Inc., 794 F.2d 1051 (5th Cir. 1986). Enforcement of a subordination agreement by one creditor against another may also be related to a chapter 11 case. State Bank v. Chart House, Inc., 46 B.R. 468 (N.D. Ill. 1985). Finally, related to subject matter jurisdiction may not be contrived by transferring a cause of action to a debtor-in-possession solely to manufacture jurisdiction. See 28 U.S.C. ¤ 1359; Maislin Indus., U.S., Inc. v. C.J. Van Houten E Zoon, Inc. (In re Maislin Indus., U.S., Inc.), 66 B.R. 614 (E.D. Mich. 1986). Based on the foregoing formulation of the meaning of Òrelated to, query whether there are any proceedings within the court's statutory subject matter jurisdiction, but outside of the constitutional scope of matters that may be determined by exercise of the judicial power of the United States?

104.    28 U.S.C. ¤ 1334(a), (b) (1984), provides:

(a)    Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b)    Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

The bankruptcy court system and jurisdictional provisions enacted as part of the 1984 Amendments became effective for Bankruptcy Code cases on the same date (July 10, 1984), subject to certain exceptions. 1984 Amendments, section 122, 98 Stat. 346, 28 U.S.C. sections 1334(c)(2) (mandatory abstention) and 1411(a) (jury trial for personal injury and wrongful death tort claims) are only applicable to bankruptcy cases and proceedings filed after July 10, 1984. Id. at ¤ 122(b). Also, the salary provisions and retroactive extension of bankruptcy judge terms became effective as of June 27, 1984. Id. at 122(c).

105.    28 U.S.C. ¤ 1334(d) (1986), provides:

The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate.

In Community Thrift & Loan v. Suchy (In re Suchy, 786 F.2d 900 (9th Cir. 1986), the debtors attempted to sue in the bankruptcy court their secured lender for allegedly fraudulent representations made in connection with the loan. The debtors requested equitable relief and money damages after the secured lender bid on the property at a foreclosure sale that was authorized pursuant to a settlement agreement with the debtor. No stay of the foreclosure sale was granted. Because the property was no longer property of the estate and because the settlement agreement authorized foreclosure the court affirmed an order dismissing the debtors' claims for lack of subject matter jurisdiction. Presumably, absent the settlement agreement the

debtors' claims for misrepresentation would have been estate assets over which the court would have had subject matter jurisdiction. Having authorized foreclosure in a settlement, however, the debtors were later precluded from claiming they had grounds to prevent or undo the foreclosure, so the estate had no remaining causes of action.

106.    In re S.E. Hornsby & Sons Sand & Gravel Co., 45 B.R. 988, 996 (Bankr. M.D. La. 1985). Complaints to recover property of the estate should not be confused with complaints based on choses in action such as accounts receivable of the estate. In the latter instance, the chose in action is property of the estate, but the money sought in satisfaction of it is not. See note 253, infra.

107.    28 U.S.C. 151(1984). The United States Code no longer creates or provides for a United States Bankruptcy Court. King, Jurisdiction and Procedure under the Bankruptcy Amendments of 1984, 38 VAND. L. REV. 675, 678 n. 12 (1985). Accordingly, the technically correct caption for cases before the bankruptcy court is now, for example:

---

**BANKRUPTCY COURT UNIT**
**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| MJB, LTD., | |
| Debtor. | Case No. |

---

See Alabama Fuel Sales Co. v. Newpark Resources, Inc. (In re Alabama Fuel Sales Co.,), 12 B.C.D. 533, 534 (Bankr. N.D. Ala. 1984) (It would seem inappropriate to style cases 'In the Bankruptcy Court.'). But cf Lesser v. A-Z Assocs. (In re Lion Capital Group), 12 B.C.D. 840, 841 n.2 (Bankr. S.D.N.Y. 1985). Some bankruptcy courts have adopted local rules providing for the court to be referred to as the United States Bankruptcy Court, thereby making it appropriate for the caption to designate the court as the United States Bankruptcy Court.

108.    28 U.S.C. ∞151, 157(b)(1), 157(c)(1) (1984).

109.    See 28 U.S.C. ¤ 157(b)(2)(f).

110.    28 U.S.C. ¤ 157(b)(1).

111.    See, e.g., Nanodata Computer Corp. v. Space Circuits Ltd. (In re Nanodata Computer Corp.), 13 B.C.D. 488,492 (Bankr. W.D.N.Y. 1985).

112.    See pp. 708-11, 717-19, supra. Service by mail pursuant to Bankruptcy Rule 7004 is appropriate and constitutional in both core and noncore proceedings. Windsor Communications Group, Inc. v. Grant, B.R. (E.D. Pa. 1985) (available on Lexis); see Creditors Comm. of Park Nursing Center, Inc. v. Samuels (In re Park Nursing Center, Inc.), 766 F.2d 261(6th Cir. 1985) (service by first-class mail in bankruptcy case is constitutional).

---

To further emphasis this premise, the Bankruptcy Unit Judge possesses the same powers as a Magistrate of the U.S. District Court. In the case of <u>TPO, Inc. v. McMillen</u>, 460 F2n 348, (7th Cir. 1972), the Circuit Appeals Court stated :

> "Under the Magistrates Act, magistrates have <u>no power to decide motions to dismiss or motions for summary judgement</u>, both of which involve ultimate decision making, and the district courts have no power to delegate such duties to magistrates."

If the Bankruptcy Unit Judge cannot issue any order that a Magistrate cannot issue, then any order that allegedly dismisses the Defendant's counter-claims and/or order on Defendant's Motion for Summary judgment would be void, or at the very least, an abuse of discretion by the Unit judge, as it has a direct effect on the property of the estate and the Debtor's ability to satisfy it's creditors.

The Plaintiff filed for protection under Title 11 of the U.S. Code, and functioned in a manner that would grant them all of the protection they were entitled to under that Law. The Defendant can not find anywhere in the Code, nor have they ever discovered any case citings that show that the Bankruptcy Unit Judge possesses any statutory authority to grant any relief that would effect the rights to property (more commonly known as "vested rights"), where-ever located, including the request for a dismissal of the Defendant's counter-claims Dismissal of the same, by the Bankruptcy Unit Judge, denies this Defendant his equal protection under the laws of the United States of America, and denies him due process under the Law.

Further, Federal Pleading Rules provide for "notice pleading, (Federal Rule 8) under which a federal pleading is deemed sufficient if it informs the adversary without details, of the pleader's position with respect to the controversy. Professor Wright has decried the use of the term "notice pleading' as " prejudicial to a proper operation of federal procedure, because it is a pure abstraction..." Wright, LAW OF FEDERAL COURTS 443 (4TH ed.. 1983). The Plaintiff attempts to use Illinois case law that is based on fact pleading without citing why Illinois fact pleading is applicable in the instant cause.

Dated this  11  day of August, 2004.                Respectfully submitted,

                                                    *[signature]*
                                                    Donald W. Bauer (defendant)

/3